**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DERRICK M. BALDWIN, | : | Civil No. 07-1741 (PGS) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GRACE ROGERS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> DERRICK M. BALDWIN
> Special Treatment Unit
> P.O. Box 699
> Kearny, New Jersey  07032
> Petitioner Pro Se

> ATTORNEY GENERAL OF NEW JERSEY
> DAVID L. DACOSTA, DEPUTY ATTORNEY GENERAL
> P.O. Box 112
> Trenton, New Jersey  08625
> Attorneys for Respondents

**SHERIDAN**, District Judge

Derrick M. Baldwin filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a), and a Brief in support of the Petition, challenging an order entered by the Superior Court of New Jersey on March 8, 2004, civilly committing him as a sexually violent predator ("SVP"). Respondents filed an Answer and a Supplemental Answer.  Petitioner filed a Reply and a Supplemental Reply.  For the reasons expressed below, this Court will dismiss the Petition and deny a certificate of appealability.

# I.  BACKGROUND

On September 24, 2003, the Attorney General of New Jersey filed a petition for civil commitment of Derrick Baldwin under the New Jersey Sexually Violent Predator Act ("SVPA"), N.J. STAT. ANN. § 30:4-27.24, et seq.[1]  See In the Matter of the Civil Commitment of Derrick Baldwin, Docket No. SVP-337-03 petition (N.J. Super., Law Div., filed Sept. 24, 2003).  The petition asserts that Derrick Baldwin was convicted on June 23, 1995, of sexual assault and attempted murder and sentenced to a 15-year term of imprisonment; he is scheduled to be released from prison on October 1, 2003; and he qualifies for civil commitment as a sexually violent predator.  Id.  Clinical certificates completed by Herbert Kaldany, D.O., and Susan E. Uhrich, and a certification in support of determination of probable cause, were attached to the petition.  Id.

By order entered October 1, 2003, the Superior Court of New Jersey, Law Division, Cumberland County, ordered Derrick Baldwin's civil commitment to the Special Treatment Unit, a secure facility designated for the custody, care and treatment of sexually violent predators; appointed the Public Defender to represent Baldwin; directed the Attorney General to notify Baldwin of the hearing at least 10 days prior to the date of the hearing; and scheduled an evidentiary hearing on the continuing need for involuntary commitment as a sexually violent predator for October 21, 2003.  Nothing in the record provided to this Court indicates that Petitioner was given any sort of hearing before the order of civil commitment was entered and before he was transferred from prison to the sexual predator facility on October 1, 2003.

---

[1] The SVPA, enacted in 1998 and effective August 12, 1999, permits the involuntary civil commitment of a "sexually violent predator" to a separate and secure facility for control, care and treatment.  N.J. STAT. ANN. § 30:4-27.24, et seq.

2

An evidentiary hearing was conducted on January 20, 2004, and March 8, 2004.  The

Attorney General presented the testimony of Natalie Barone, a psychologist at the Special

Treatment Unit, and Charles P. Gnassi, a psychiatrist at the Special Treatment Unit.  Daniel P.

Greenfield, a forensic psychiatrist, testified for Derrick Baldwin.  By order entered March 8,

2004, Judge Perretti committed Derrick Baldwin to the Special Treatment Unit as a sexually

violent predator and ordered a review hearing to be conducted in 12 months on February 2, 2005.

See In the Matter of the Civil Commitment of Derrick Baldwin, Docket No. SVP-337-03 order

(N.J. Super., Law Div., March 8, 2004).

Derrick Baldwin, through counsel, filed a notice of appeal.  Baldwin raised two grounds

in a brief filed by counsel, and three grounds in a pro se supplemental brief.[2]  In a 19-page

opinion filed February 15, 2006, the Superior Court of New Jersey, Appellate Division, affirmed

the order of civil commitment entered March 8, 2004, on the merits.  See In the Matter of the

Civil Commitment of D.M.B., Docket No. A-3896-03T2 slip op. (N.J. Super., App. Div., Feb.

15, 2006).  The Supreme Court of New Jersey denied Baldwin's petition for certification by

order filed May 25, 2006.

---

[2] Counsel argued: (1) Baldwin's civil commitment under the SVPA violates the Ex Post
Facto Clause of the United States Constitution; (2) the admission of hearsay violated the rules of
evidence, the right to cross-examine witnesses and the Due Process Clause.  Petitioner argued in
his supplemental brief: (3) the Fourteenth Amendment of the Constitution requires due process
safeguards; (4) the transfer of Baldwin to the Special Treatment Unit without notice and a
hearing deprived him of liberty without due process of law contrary to the Fourteenth
Amendment; and (5) Baldwin's civil commitment is barred by collateral estoppel and res
judicata.  See In the Matter of the Civil Commitment of D.M.B., Docket No. A-3896-03T2 slip
op., pp. 13-14 (N.J. Super., App. Div., Feb. 15, 2006).

Derrick Baldwin signed the Petition presently before this Court on April 2, 2007.  The

Clerk received it on April 12, 2007.  The brief filed with and in support of the Petition challenges

the order of March 8, 2004, on the following grounds, which are set forth below verbatim:

> Ground One: THE "CIVIL COMMITMENT" UNDER THE
> SVPA IS NOTHING LESS THAN INCARCERATION IN
> VIOLATION OF THE PROHIBITION OF EX POST FACTO
> AND DOUBLE JEOPARDY LAWS, OF BOTH THE STATE
> AND FEDERAL CONSTITUTION.
>
> > A.  THE HEARING COURT'S COMMITMENT OF DB
> > UNDER THE SEXUALLY VIOLENT PREDATOR ACT
> > (SVPA) VIOLATES THE EX POST FACTO CLAUSE OF
> > THE CONSTITUTION BECAUSE DB'S ADDITIONAL
> > CONFINEMENT WAS THE RESULT OF THE STATE'S
> > DELIBERATE AND UNJUSTIFIED DELAY IN
> > SEEKING DB'S COMMITMENT UNTIL THE END OF
> > HIS CRIMINAL SENTENCE, DESPITE A PRIOR ADTC
> > EVALUATION WHICH INDICATED THAT DB WAS
> > ELIGIBLE FOR SENTENCING UNDER THE NJ SEX
> > OFFENDER ACT.
> >
> > B.  PROVISION OF THE SVPA, UNDER THE GUISE
> > OF LAWS RELATING TO PROCEDURE OF PRISON
> > REGULATIONS OR PRISON ADMINISTRATION
> > DECISIONS CANNOT TAKE AWAY OR INTERFERE
> > WITH ANY SUBSTANTIAL RIGHT OR PRIVILEGE
> > WHICH WAS SECURED TO A PARTY BY THE LAW
> > AS IT WAS WHEN THE OFFENSE WAS COMMITTED.
>
> Ground Two: IN ITS SENTENCING OF DB AS A SEXUALLY
> VIOLENT PREDATOR, THE HEARING COURT COMMITTED
> REVERSIBLE ERROR BY RELYING PRIMARILY ON DB'S
> HISTORY OF SEXUAL OFFENSES; BY RELYING HEAVILY
> ON HEARSAY; AND BY RELYING HEAVILY ON HEARSAY
> THAT VIOLATED N.J.R.E. 703 BECAUSE THE COURT'S
> RELIANCE INFRINGED ON DB'S RIGHT TO CROSS
> EXAMINATION; INFRINGED ON DB'S RIGHT TO DUE
> PROCESS; AND BECAUSE ITS DECISION LACKED CLEAR
> AND CONVINCING PROOF OF A PRESENT SEXUAL
> ABNORMALITY.

4

Ground Three: PROVISIONS OF NEW JERSEY SEXUAL
VIOLENT PREDATOR'S ACT SHOULD BE DECLARED
"VOID FOR VAGUENESS" AND "OVER BROAD" AS IT IS
APPLIED AND ENFORCED IN THIS CASE IN VIOLATION
OF STATE AND FEDERAL CONSTITUTION, U.S. FIFTH AND
FOURTEENTH AMENDMENT, AND NEW JERSEY ARTICLE
I, PARAGRAPH.

    A.  DUE PROCESS

    B.  EQUAL PROTECTION

Ground Four: THE NEW JERSEY SVPA VIOLATES THE
UNITED STATES CONSTITUTION BECAUSE IT FAILS TO
PROVIDE FOR TRIAL [BY] JURY.

Ground Five: DB WAS DENIED THE EFFECTIVE
ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH
AND FOURTEENTH AMENDMENT.

(Brief in support of Petition, table of contents.)

On June 14, 2007, this Court ordered Respondents to file an answer and the state record,

and permitted Petitioner to file a reply to the answer.  On August 1, 2007, Respondents filed an

Answer, a brief in opposition to the Petition, and several exhibits.  On October 16, 2007,

Petitioner filed a motion for an order enjoining Respondents and Judge Serena Perretti from

conducting his annual review hearing, see N.J. STAT. ANN. § 30:4-27.35, scheduled for October

12, 2007, in the Superior Court of New Jersey, pending the outcome of this § 2254 Petition.  By

Order entered October 26, 2007, this Court denied the motion.  On November 20, 2007,

Petitioner filed a Traverse and a brief in opposition to the Answer, as well as a motion for an

evidentiary hearing on whether trial and appellate counsel were constitutionally ineffective.  By

Order filed July 29, 2008, this Court denied Petitioner's motion [docket entry #9] for an

evidentiary hearing, directed Respondents to file a supplemental answer and supplemental

record, directed Petitioner to file a supplemental reply, and permitted Petitioner to file an amended petition.  Respondents thereafter filed two letters, together with supplements to the record, and Petitioner filed a supplemental reply.  According to the supplemental record, the Law Division conducted an evidentiary hearing pursuant to N.J. STAT. ANN. § 30:4-27.24 on September 17, 2008, and October 29, 2008, and entered an order on November 3, 2008, civilly committing Petitioner to the Special Treatment Unit as a sexually violent predator and scheduling a review hearing for October 16, 2009.

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d

152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[3]  Nor may the court recharacterize a ground asserted under state law into a federal constitutional claim.[4]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not

---

[3] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[4] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

generally raise a constitutional claim." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); <u>see also</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. <u>See</u> 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. <u>See</u> 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal

8

quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim."  Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412; see also Carey v. Musladin, 127 S. Ct. 649, 653 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or

9

principles set forth by the Supreme Court at the time the state court renders its decision."

Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it

"confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  For example, in Carey v. Musladin, the court reversed the granting of

a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to

apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision was

not contrary to or an unreasonable application of clearly established federal law."  Carey, 127 S.

Ct. at 654.[5]  In addition, whether a state court's application of federal law is "unreasonable" must

be judged objectively; an application may be incorrect, but still not unreasonable.[6]  Id. at 409-10;

see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005). "[T]his Court has held on

_____

[5] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no
clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that
the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal
quotation marks omitted).

[6] "[D]ecisions of federal courts below the level of the United States Supreme Court may
be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly
established United States Supreme Court precedent, as well as helpful amplifications of that
precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal
quotation marks omitted).

numerous occasions that it is not 'an unreasonable application of clearly established Federal law'
for a state court to decline to apply a specific legal rule that has not been squarely established by
this Court." See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (citing Wright v. Van
Patten, 552 U.S. ----, ----, 128 S.Ct., at 746-47 (2008) *(per curiam)).*

### III.  DISCUSSION

A.  Ex Post Facto and Double Jeopardy

Petitioner argues in Ground One that his confinement as a sexually violent predator
violates the Constitution's Ex Post Facto and Double Jeopardy Clauses because he is being
punished for past conduct for which he has already served a sentence of incarceration.  The
government argues that habeas relief is not warranted on this ground because the New Jersey
courts' decision rejecting this claim is not an unreasonable application of Kansas v. Hendricks,
521 U.S. 346 (1997), and Seling v. Young, 531 U.S. 250 (2001).

Petitioner presented these claims to the Appellate Division on direct appeal from the
March 8, 2004, order of civil commitment.  The Appellate Division rejected the claims based on
the New Jersey Supreme Court's determination that the SVPA was not punitive:

> [I]n State v. Bellamy, 178 N.J. 127, 138 (2003), [the New Jersey
> Supreme Court] held that the Legislature's intent in enacting the
> SVPA was regulatory.  The Court found that, although
> commitment under the SVPA is "onerous and has some punitive
> impact," this is merely the "inevitable consequence of the
> regulatory provisions."  Ibid. . . . .  Any punitive impact that results
> from confinement under the SVPA is not solely attributable to a
> punitive legislative intent.  Ibid.  Because the SVPA does not
> impose punishment, it does not violate the ex post facto clause of
> either the Federal or State Constitution.  See Kansas v. Hendricks,
> 521 U.S. 346, 361 . . . (1997) (rejecting an ex post facto challenge
> to a substantially similar Kansas statute).

11

D.M.B. contends, however, that the SVPA is punitive because referrals for commitment are not made until ninety days before the defendant's "anticipated release from total confinement." N.J.S.A. 30:4-27.27(a)(1). D.M.B. argues that if the State is intent on protecting the public and providing treatment for sex offenders like himself, the State should initiate commitment proceedings and provide sex offender specific treatment during incarceration.

We disagree. In our view, the timing of commitment under the SVPA does not negate the essential regulatory aim of the law which is to protect the public from individuals whose propensity to commit acts of sexual violence "is of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. Under the SVPA, that determination is made at or about the time the sex offender is scheduled for release from "total confinement." N.J.S.A. 30:4-27(a)(1). If an offender is a sexually violent predator at or about the time of release from incarceration, the individual poses a threat to the public. The referrals for commitment under the SVPA are timed to address the danger when it is imminent. In our view, the timing of commitment under the SVPA does not turn the measure into a "mechanism for retribution or general deterrence." Hendricks, supra, 521 U.S. at 373 . . . (Kennedy, J., concurring).

In re D.M.B., Docket No. A-3896-03T2 slip op., pp. 18-19.

As mentioned above, in State v. Bellamy, 178 N.J. 127 (2003), the New Jersey Supreme Court determined that commitment under the SVPA is regulatory, not penal. "The Act focuses on a sex offender's mental condition and the dangers posed to the public. Although the confinement is onerous and has some punitive impact, that impact is the inevitable consequence of the regulatory provisions. That is, the impact is not solely attributable to a punitive legislative intent." Id. at 138 (citations and internal quotation marks omitted); accord In re Commitment of J.M.B., 197 N.J. 563, 577 (2009) ("the SVPA is not part of the criminal code and it has been clearly determined that civil commitment under the SVPA is not punitive") (citing Bellamy, 178 N.J. at 138).

12

The Supreme Court held in <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997), that

> The categorization of a particular proceeding as civil or criminal is first of all a question of statutory construction. We must initially ascertain whether the legislature meant the statute to establish "civil" proceedings. If so, we ordinarily defer to the legislature's stated intent . . . . Although we recognize that a civil label is not always dispositive, we will reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. In those limited circumstances, we will consider the statute to have established criminal proceedings for constitutional purposes. Hendricks, however, has failed to satisfy this heavy burden.

<u>Hendricks</u>, 521 U.S. at 361 (citations and internal quotation marks omitted).

In <u>Seling v. Young</u>, 531 U.S. 250 (2001), the Supreme Court ruled that where the State's highest court has determined that commitment under the State's SVPA is civil, that determination precludes an inmate's double jeopardy and ex post facto challenge based on the punitive nature of the act. "Permitting respondent's as-applied challenge would invite an end run around the Washington Supreme Court's decision that the Act is civil in circumstances where a direct attack on that decision is not before this Court." <u>Seling</u>, 531 U.S. at 263-64.

In this case, Petitioner cites no Supreme Court precedent which holds that a civil commitment statute like New Jersey's SVPA violates the Ex Post Facto or Double Jeopardy Clauses. And, as the Court held in <u>Seling</u>, the New Jersey Supreme Court's determination that the SVPA is civil precludes Petitioner's double jeopardy and ex post facto challenges. This Court holds that the New Jersey courts' adjudication of Petitioner's double jeopardy and ex post facto claims was not contrary to, or an unreasonable application of <u>Kansas v. Hendricks</u> and <u>Seling v. Young</u>. <u>See</u> <u>Talbert v. Goodwin</u>, 2009 WL 223710 at *8 (D.N.J. Jan. 29, 2009)

(holding that SVP is not entitled to habeas relief on claims that SVPA violates double jeopardy and ex post facto clauses). Petitioner is therefore not entitled to habeas relief on Ground One.

B.  Admission of Hearsay

Petitioner argues in Ground Two that "THE HEARING COURT COMMITTED REVERSIBLE ERROR BY RELYING PRIMARILY ON DB'S HISTORY OF SEXUAL OFFENSES; BY RELYING HEAVILY ON HEARSAY; AND BY RELYING HEAVILY ON HEARSAY THAT VIOLATED N.J.R.E. 703 BECAUSE THE COURT'S RELIANCE INFRINGED ON DB'S RIGHT TO CROSS EXAMINATION; INFRINGED ON DB'S RIGHT TO DUE PROCESS; AND BECAUSE ITS DECISION LACKED CLEAR AND CONVINCING PROOF OF A PRESENT SEXUAL ABNORMALITY."  (Petitioner's Brief; Docket entry #1-4, p. 27.)

To the extent that Petitioner asserts that the admission of hearsay violated his rights under the Confrontation Clause, the claim does not warrant habeas relief.  The Confrontation Clause provides:  "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause applies only to criminal proceedings and the Supreme Court has not held that the Confrontation Clause of the Sixth Amendment applies to a civil commitment proceeding.  See Carty v. Nelson, 426 F. 3d 1064, 1073 (9th Cir. 2005); Talbert v. Goodwin, 2009 WL 223710 at *11; In re Civil Commitment of T.J.N, 390 N.J. Super. 218, 225 (App. Div., 2007).

To the extent that Petitioner contends that the admission of hearsay violated due process, he is not entitled to habeas relief either.  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  Marshall v.

14

Lonberger, 459 U.S. 422, 438 n.6 (1983).  "A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence."  Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001); see also Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting . . . testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling on a discretionary matter, that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").  Although New Jersey courts have held that the Due Process Clause limits the use of hearsay in sexually violent predator commitment hearings,[7] this Court is not aware of any Supreme Court case clearly establishing that the admission of hearsay in a sexually violent predator commitment hearing constitutes a violation of due process, and the most relevant Supreme Court cases suggest the contrary.  See, e.g., Hamdi v. Rumsfeld, 542 U.S. 507, 533-35 (2004) (admission of hearsay does not violate due process in enemy combatant proceeding under § 2241); Vitek v. Jones, 445 U.S. 480, 494-97 (1980) (to satisfy due process, a prisoner facing involuntary commitment in a mental hospital is entitled to written notice, a hearing at which disclosure to the prisoner is made of the evidence being relied upon for the transfer and at which an opportunity to be heard in person and to present documentary evidence is given, an opportunity at the hearing for the prisoner to be heard in person, to present testimony and documentary evidence, and to confront and cross-examine witnesses called by the state, except

---

[7] See, e.g., In re Civil Commitment of G.G.N., 372 N.J. Super. 42, 58 (App. Div. 2004) ("Even without the explicit restriction adopted in Crawford, there is a tipping point where due process is violated by the use of hearsay"); In re Civil Commitment of E.S.T., 371 N.J. Super. 562, 575 ("As a matter of fundamental fairness, we conclude that the State should be required to produce at the initial SVPA commitment hearing the physicians who signed the clinical certificates supporting the commitment petition, if they are available and if any expert testifying in court intends to rely on the opinions contained in those certificates").

upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation or cross-examination; an independent decision-maker; a written statement by the factfinder as to the evidence relied on and the reasons for transferring the inmate; independent assistance by a person who need not be an attorney; and effective and timely notice of the foregoing rights); Addington v. Texas, 441 U.S. 418, 432-33 (1979) (holding that "to meet due process demands," the standard of proof for civil commitment proceedings must be higher than the preponderance-of-the-evidence standard); California v. Green, 399 U.S. 149, 164 (1970) ("While we may agree that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking, we do not read Bridges[v. Wixon, 326 U.S. 135 (1945),] as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted"); Estelle v. McGuire, 502 U.S. 62 (1991) (admission of evidence of prior injuries in a trial for infant murder does not violate due process); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial . . . .  But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure") (citations omitted).

Because the Supreme Court has not clearly established that the admission of hearsay in a civil commitment hearing violates due process, the New Jersey courts' rejection of Petitioner's hearsay claim was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, and Petitioner is not entitled to habeas relief under this ground.  See Apanovitch v. Houk, 466 F. 3d 460, 487-88 (6th Cir. 2006) (admission of hearsay

testimony that reflected that the victim was fearful of petitioner did not violate due process or warrant habeas relief under § 2254); Carty v. Nelson, 426 F. 3d 1064, 1075-76 (9th Cir. 2005) (because "Carty fails to identify any Supreme Court case which imposes an obligation on the . . . District Attorney to proffer only live testimony at civil commitment hearings under the SVP Act," claim that admission of the victims' statements was fundamentally unfair does not warrant habeas relief).

C.  Vagueness

Petitioner claims in Ground Three that "PROVISIONS OF NEW JERSEY SEXUAL VIOLENT PREDATOR'S ACT SHOULD BE DECLARED 'VOID FOR VAGUENESS' AND 'OVER BROAD' AS IT IS APPLIED AND ENFORCED IN THIS CASE IN VIOLATION OF STATE AND FEDERAL CONSTITUTION, U.S. FIFTH AND FOURTEENTH AMENDMENT."  (Pet., Ground Three; Docket entry 1-4, p. 36.)   As factual support, Petitioner asserts:

> The policies to determine and to select DB for civil commitment are unconstitutionally vague because [they] do not give t[o] him, and others similarly situated fair notice of what prohibited conduct they have engaged and what have would put them at risk of being characterized as dangerous and that warranted arbitrary selection as a "sexual violent predator."  Rather . . . , the current policy allow[s] arbitrary selection of individual as SVP's and gives the State permission to relentlessly harass and prosecute him until it achieved its desired result of a capital verdict under the disguise of a civil remedy.

(Petitioner's Brief; Docket entry #1-4, p.37 to 1-5, p.1.)

In United States v. Williams, 128 S. Ct. 1830 (2008), the Supreme Court determined that portion of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today

Act which criminalizes the pandering or solicitation of child pornography is not impermissibly

vague under the Due Process Clause.  The Court outlined the vagueness doctrine:

> Vagueness doctrine is an outgrowth not of the First Amendment,
> but of the Due Process Clause of the Fifth Amendment.  A
> conviction fails to comport with due process if the statute under
> which it is obtained fails to provide a person of ordinary
> intelligence fair notice of what is prohibited, or is so standardless
> that it authorizes or encourages seriously discriminatory
> enforcement . . .
>
> What renders a statute vague is not the possibility that it will
> sometimes be difficult to determine whether the incriminating fact
> it establishes has been proved; but rather the indeterminacy of
> precisely what that fact is.  Thus, we have struck down statutes that
> tied criminal culpability to whether the defendant's conduct was
> "annoying" or "indecent" - wholly subjective judgments without
> statutory definitions, narrowing context, or settled legal meanings.

Williams, 128 S. Ct. at 1845, 1846.

Moreover, to succeed on a due process vagueness challenge, "the complainant must

demonstrate that the law is impermissibly vague in all of its applications."  Village of Hoffman

Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982).  And outside the First

Amendment context, it is clear that "[o]ne to whose conduct a statute clearly applies may not

successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974).

In this case, the Appellate Division outlined in detail the facts which proved by clear and

convincing evidence that Petitioner was a sexually violent predator warranting civil commitment

under the SVPA.  Petitioner does not contend that he falls out side the Act, but seeks to challenge

the vagueness of the law as it might be hypothetically be applied to the conduct of others.  See

Parker v. Levy, 417 U.S. at 755-56.  Because it is clear that "[o]ne to whose conduct a statute

clearly applies may not successfully challenge it for vagueness," Parker v. Levy, 417 U.S. at 756,

the New Jersey courts' rejection of his vagueness claim was not contrary to, or an unreasonable

application of, clearly established Supreme Court precedent.  Thus, habeas relief is not warranted

on this ground.

D.  Jury Trial

Petitioner argues in Ground Four that "THE NEW JERSEY SVPA VIOLATES THE

UNITED STATES CONSTITUTION BECAUSE IT FAILS TO PROVIDE FOR TRIAL BY

JURY."  (Petitioner's Brief; Docket entry #1-5, p. 19.)

This claim does not warrant habeas relief because the Supreme Court has not ruled that

the Constitution requires a trial by jury in a civil commitment proceeding.  In Addington v.

Texas, 441 U.S. 418 (1979), the Supreme Court held that the standard of proof required by due

process in a civil commitment proceeding is clear and convincing evidence.  In rejecting the

"beyond a reasonable doubt" standard, the Court observed that due process allows states to

employ their own preferred procedures:

> That some states have chosen - either legislatively or judicially - to
> adopt the criminal law standard gives no assurance that the more
> stringent standard of proof is needed or is even adaptable to the
> needs of all states.  The essence of federalism is that states must be
> free to develop a variety of solutions to problems and not be forced
> into a common, uniform mold.  As the substantive standards for
> civil commitment may vary from state to state, procedures must be
> allowed to vary so long as they meet the constitutional minimum

Addington, 441 U.S. at 430-41 (footnotes omitted).

Moreover, as previously stated, the Supreme Court did not hold that due process requires

a trial by jury before a prisoner is civilly committed to a mental hospital.  See Vitek, 445 U.S. at

494-97.  As the Supreme Court has not clearly established a right to trial by jury in a civil

commitment proceeding, the New Jersey courts' rejection of Petitioner's jury trial claim was not contrary to, or an unreasonable application of Supreme Court precedent and habeas relief is not warranted on this ground.  See Poole v. Goodno, 335 F. 3d 705 (8th Cir. 2003) (state court's decision that petitioner was not entitled to jury trial in SVP civil commitment proceeding was not contrary to, or unreasonable application of Supreme Court precedent); Bagarozy v. Goodwin, 2008 WL 4416455 at *13 (D.N.J. Sept. 23, 2008) (same).

E.  Ineffective Assistance of Counsel

　　　Petitioner argues in Ground Five that he was denied the effective assistance of counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  Because the Sixth Amendment right to counsel, by its express terms, applies only to criminal proceedings, Petitioner has no Sixth Amendment right to effective assistance of counsel in a civil commitment proceeding.  Cf. Allen v. Illinois, 478 U.S. 364 (1986) (holding that Fifth Amendment Self-Incrimination Clause does not apply in civil commitment under Illinois Sexually Dangerous Persons Act because proceeding were not criminal, and Fourteenth Amendment's guarantee of due process does not independently require application of the privilege).

　　　However, the Due Process Clause may independently require the provision of counsel to indigent litigants in certain non-criminal proceedings.  In Vitek v. Jones, the majority held, per the concurring opinion of Justice Powell, that, although a state is free to appoint a licensed attorney to represent a prisoner who is threatened with involuntary commitment to a mental hospital, due process does not require the appointment of counsel and is satisfied so long as a prisoner is provided an independent adviser who is not a lawyer:

The essence of procedural due process is a fair hearing.  I do not think that the fairness of an informal hearing designed to determine a medical issue requires participation by lawyers.  Due process merely requires that the State provide an inmate with qualified and independent assistance.  Such assistance may be provided by a licensed psychiatrist or other mental health professional.  Indeed, in view of the nature of the issue involved in the transfer hearing, a person possessing such professional qualifications normally would be preferred.  As the Court notes, "[t]he question whether an individual is mentally ill and cannot be treated in prison 'turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists.'" Ante at 1265, quoting Addington v. Texas, 441 U.S. 418 . . . (1979).  I would not exclude, however, the possibility that the required assistance may be rendered by competent laymen in some cases.  The essential requirements are that the person provided by the State be competent and independent, and that he be free to act solely in the inmate's best interest.

In sum, although the State is free to appoint a licensed attorney to represent an inmate, it is not constitutionally required to do so.  Due process will be satisfied so long as an inmate facing involuntary transfer to a mental hospital is provided qualified and independent assistance.

Vitek, 445 U.S. at 500 (Powell, J., concurring).[8]

Similarly, in Washington v. Harper, 494 U.S. 210, 235-36 (1990), the Court held that a prisoner has a protected liberty interest in avoiding the forced administration of antipsychotic drugs, but due process is satisfied by notice, the right to be present at an adversary hearing, the right to present and cross-examine witnesses, and the provision of an independent lay adviser who understands the psychiatric issues involved; the Court emphasized that due process does not

---

[8] Four justices would have held in Vitek that due process requires the state to provide counsel to prisoners at a hearing to determine whether the prisoner should be involuntarily committed to a mental hospital for treatment.

require the provision of an attorney.  And in <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, the Court declined to hold that indigent probationers have a per se right to counsel at revocation hearings.

On the other hand, in <u>In re Gault</u>, 387 U.S. 1, 41 (1967), the Supreme Court determined that "the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed," an indigent juvenile has a right to appointed counsel, even though proceedings may be styled "civil" rather than "criminal."  As the Court explained in <u>Lassiter v. Dep't of Social Services of Durham County, N.C.</u>, 452 U.S. 18, 26-27 (1981), "the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."

This Court will assume without deciding that an indigent person has a due process right to the appointment of counsel in a civil commitment proceeding to determine if he is a sexually violent predator, and that the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984), governs such an ineffective assistance of counsel claim.

Under <u>Strickland</u>, a claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  <u>Id</u>. at 690.  The court must then

22

determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  <u>Id</u>.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id</u>. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

<u>Strickland</u>, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."  <u>Strickland</u>, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Id</u>.

In this case, Petitioner asserts that he was denied the effective assistance of counsel by counsel's failure to adequately investigate all defenses and strategies, and counsel's failure to raise all available constitutional claims.  Specifically, he asserts: "Although [petitioner] does not know what a thorough investigation might have exposed, the glaring failure to even make an

attempt constitutes the source of the ineffectiveness counsel surely knew of the existence of

improprieties and should have investigated, as she was urged to do so by DB to advance his

constitutional claims, that will preserve his claims for 'federal exhaustion purposes.'"

(Petitioner's Brief; Docket entry 1-5, p. 24.

As the Supreme Court recently reiterated in <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411

(2009), counsel cannot be constitutionally ineffective in failing to pursue a defense that had

almost no chance of success:

> [T]he state court's rejection of Mirzayance's ineffective-assistance-of-counsel claim [based on failure to present an insanity defense] was consistent with <u>Strickland</u>. The Court of Appeals insisted, however that reasonably effective assistance required here that counsel assert the only defense available. But we are unaware of no "prevailing professional norms" that prevent counsel from recommending that a plea be withdrawn when it is almost certain to lose. <u>See Strickland</u>, <u>supra</u>, at 688 . . . . And in this case, counsel did not give up the only defense available. Counsel put on a defense to first-degree murder . . . . The law does not require counsel to raise every available nonfrivolous defense. <u>See Jones v. Barnes</u>, 463 U.S. 745, 751 . . . (1983) . . . . Counsel also is not required to have a tactical reason-above and beyond a reasonable appraisal of a claim's dismal prospects for success- for recommending that a weak claim be dropped altogether. Mirzayance has thus failed to demonstrate that his counsel's performance was deficient.

<u>Knowles v. Mirzayance</u>, 129 S. Ct. at 1421-22 (citations, internal quotation marks and footnote

omitted). Likewise, the Supreme Court held in <u>Mirzayance</u> that a petitioner cannot show

prejudice by counsel's failure to present a defense that had almost no chance of success. <u>Id.</u> at

1422.

In this case, Petitioner has shown neither deficient performance nor prejudice in the

alleged failure of counsel to conduct additional investigation (Petitioner admits that he does not

know what counsel would have found) or to assert all the constitutional claims that Petitioner wanted counsel to raise.  See Mirzayance, 129 S. Ct. at 1422 ("The law does not require counsel to raise every available nonfrivolous defense"); Jones v. Barnes, 463 U.S. 745, 751 (1983) ("Neither Anders nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").

This Court holds that the rejection of Petitioner's ineffective assistance of counsel claims was not contrary to, or an unreasonable application clearly established Supreme Court precedent, and Petitioner is not entitled to habeas relief on Ground Five.

F.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.


s/Peter G. Sheridan
**PETER G. SHERIDAN, U.S.D.J.**


May 1, 2009